Good morning, your honors. I'd like to reserve five minutes of my time. My name is Stephen Jonkis and I represent Dr. Paul Thomas, who is here in the courtroom. This case is the subject of a book, The War on Informed Consent, the Persecution of Dr. Paul Thomas by the Oregon Medical Board, written three years ago. The forwarder is written by Robert F. Kennedy Jr., current presidential candidate. Mr. Kennedy wrote, we simply do informed consent, said Dr. Thomas, in summarizing this alternative ethical approach, and for doing what should be done for every child, he has been pilloried in the mainstream press and attacked by the establishment. And he lost his career. Dr. Thomas was extraordinarily successful. Dr. Thomas's patients do not get autism. I'm assuming everything you're saying is true. Does it make a bit of difference with respect to the issue in front of us? Yes. Why? Tell me why. Because the Oregon Medical Board made up a rule. Well, but let me start with the first issue. As I read the board's argument, it says it is entitled to absolute immunity, the board, not the staff members, under our case law. And if it is, then the merits or demerits of its decision make no difference. So what would be helpful to me is if you would speak to the immunity issues in this case, not whether or not you think Dr. Thomas's practices were correct or incorrect. Well, yes, Your Honor. The Supreme Court said in Buckley v. Fitzsimmons that we apply quite sparingly, recognizing absolute immunity quite sparingly. But isn't this an agency of the State of Oregon and therefore entitled to the same? If you were suing for anything but damages, we would have separate issue. But isn't this board entitled to the same sovereign immunity that the state would be when exercising the functions it exercises in this case? We didn't sue the board. We sued the individuals, the board members and the employees. As I read this, OMB was named as a priority. And the trial judge found that OMB had absolute immunity. Am I wrong? They're talking about the employees and the board members, Your Honor. So you have no claim against the board itself? No. Okay. I had misread your complaint to think that you did. Okay. With respect to the now, help me with respect to the board staff. Tell me why they're not entitled to at least qualified immunity. Because they have to operate within their statutory authority to have absolute immunity attached. Even qualified immunity? I'm sorry? Whether it's absolute or qualified immunity, tell me how they operated outside their authority in, as I understand it, instituting proceedings that resulted in your client's suspension. Isn't that what they do as a matter of authority? They created a rule that violates Oregon law. They said, Dr. Thomas, you have the responsibility to vaccinate. That's the rule that they created. And then they prosecuted him under. That violates patient rights. The person who gets to make a choice of where their child gets vaccinated is the parent, not the doctor. The doctor's only role, only role, is to provide informed consent. You're arguing now, I take it, a matter of Oregon law, not constitutional law. Well, yes, in order. I think that's right. And the difficulty I have is with the emergency suspension order is that, again, I'm trying to parse this carefully, but it seems to me what they were, your premise is challenging for me. Because the board started, or the suspension order started with the premise that there had been reports where patients hadn't been given informed consent, where they felt strong-armed and so forth and so on. I'm not here to talk to you about whether those allegations are well-founded, but those were the allegations, right, to support the emergency suspension order, that people were not being given the opportunity to make their own decisions with the information. That was the public health concern, I think, sir. Not really, Your Honor. Well, that's how I read it. And so if you could circle back, if you can take that as the premise of the question, I struggle with why absolute immunity wouldn't attach to the board members.  What's your best shot at convincing me that the board members are not entitled to absolute immunity? Chalkboard v. Brandt. Quote, State law must authorize the prosecutorial or judicial function to which absolute immunity attaches. So they are outside their scope when they make up a legislative rule, a rule as a legislature would, and says you violated that rule and therefore you lose your license. But that's an Oregon – I'm sorry, Judge. No, no, no. I interrupted you, I think, Judge Horwitz. Go right ahead. No, but see, my difficulty is that's an Oregon law argument. I mean, if Oregon law said all doctors must prescribe vaccines to children, you might be able to attack that law, but that's essentially what these guys thought it meant, at least in your broadest reading of the case. And then there was an emergency suspension, and you never pursued the hearing at which you could have raised all these issues in front of the board, including the Oregon law issues, taken them up to the Oregon courts if you thought they were wrong, and instead filed a 1983 action. So I'm having some difficulty figuring out how the board, even if mistaken about its authority, acted outside the scope of its privilege. It's not an Oregon law issue. The chalkboard case is a Ninth Circuit opinion, 1989. So it measures – Well, I don't care whether you have a Ninth Circuit case. Tell me in this case why, if Oregon law said clearly in writing, not prescribing vaccines to children, put aside the informed consent issue, violates Oregon law, then you wouldn't have this argument, would you? So what you're arguing to us is that they made up Oregon law, that it wasn't what Oregon law said. And I'm not sure why in a 1983 action we're supposed to figure out what Oregon law is. It's not what Oregon law is. It's the right to informed consent. And the board – I mean, the emergency order itself said his failure to adequately vaccinate children is grossly negligent. Okay? His failure – They said several things in that order. But my understanding is that your argument about why they're not entitled to qualified immunity is that they exceeded the scope of their statutory charge.  All right. And what's your best shot, if you would please, at convincing us that the board acted – and we'll talk about the staff members in a minute – how they exceeded the scope of their statutory authority? Because it made up a duty. It made up a duty that he had a requirement to vaccinate. Okay. He has no such duty. Is it your same – I appreciate you've articulated that. That's helpful to me. And that is your argument for the board members as well as the staff members? I understood your argument as the staff members is that they fabricated evidence. Yes. I understood that that was a different argument. But I also don't know how they did that, so I'm going to ask you to help me. Well, the staff members – you know, even under the Court's precedent, you know, judges – people sitting on the board for their judicial functions have immunity. But they don't have immunity for investigation, for writing laws. And the staff doesn't have immunity for anything but prosecutorial – what's prosecutorial? We look to the function they're performing, absolutely. It's a judicative body, which is what Judge Hurwitz was just walking you through, right? And then to the extent the staff members are investigators – that's their title, but we don't go by title. We go by function. I'm with you all the way down to there, right? And one of their functions is to investigate. And I take your complaint to argue that in the course of doing that, these folks fabricated evidence. Sure. But it seemed to me, just the one conclusory allegation in the complaint, I couldn't figure out what it is they did other than report or, you know, forward complaints they had received from members of the public. They said a reason why Dr. Thomas should lose his license is because of Patient D. Patient D is a young 9-year-old boy who had a scalp injury. He got tetanus. And they put it in this report as though Dr. Thomas was his doctor. And that is false. Dr. Thomas was never his doctor before he got injured. So this takes me back to my question about not pursuing your remedies in front of the board. You're asking a federal court to make a factual finding about whether or not Dr. Thomas was this patient's doctor. And that's precisely what the healing in front of the board should have been about. They said, here's an emergency suspension, but you have a right to a prompt hearing. You could have gone to that hearing and said, look, this is all a mistake. Dr. Thomas didn't do this. He didn't do that. But instead, you file a 1983 action that says they fabricated evidence. So you're not putting a federal court in the first instance of making the kind of findings that should have been made in the administrative proceeding. His federal claims were violated. His federal claims were violated. He did go to administrative proceedings. You mean federal rights were violated? His federal rights, his constitutional rights. He didn't go to the administrative proceeding. He only went up to the point of the emergency suspension. He never invoked and the order for the emergency suspension says, you know, we'll have a hearing. You can challenge this. You can bring in evidence to show that we're wrong. And you never did. And that's – I don't know whether you have to, but I must say that troubles me in this case. Well, he did. And the problem with administrative – Wait, wait, wait. When you say – both of you. When you say he did, this is an important point. Judge Hurwitz is positive this is an important point. We have this emergency suspension order. Was there any further action at the administrative level to exhaust any of the other avenues? There was a complaint filed in April of 21. Okay. So when you say he did, did you mean your client did exhaust other administrative avenues? He settled because that administrative, you know, for all due respect, that administrative process is a kangaroo court. Well, wait a minute. So this is an important point, and I think Judge Hurwitz and I are both struggling with it. So if you could back up. We have the emergency suspension order in front of us, sir. Now you're talking about something else that seems to be beyond the scope of our record. I don't mean to hijack your question. No, no. I'm very interested. But we're trying to figure out what else happened here that we don't know about. Well, the complaint is about the emergency suspension. Right. But he did – there was a complaint filed by the board in April five months late. It had to be filed at the same time for them to actually bring – file the emergency complaint. On which you would have been entitled to have a hearing, correct? And he went through that process. What – when you say he went through the process, did he ever – was there ever a hearing in front of the board? I didn't represent him, so I don't know the intimate details of that. But yes, he ended up – we ended up – went for a year or so. He ended up settling. Well, but whether – how it ended up is a separate issue for me. And whether or not that settlement bars some of these claims would be interesting, too, if we'd been provided with it. But I have a very narrow question. The emergency suspension order says you're entitled to a hearing. And it has to because we've done something that is an emergency without a hearing. We'll give you a prompt hearing thereafter if you want one. I can't find any evidence in this record that such a hearing was ever requested. And so tell me if I – am I missing something? I don't know that it's in the record. But it was requested. Okay, so this is important. Because what we – you started by saying he lost his career. Of course we take that very seriously. You appreciate all we have is the emergency suspension order. Right. And he was terminated as a doctor and never practiced again. As an emergency matter with the ability to seek a hearing to contest that. The State says never sought a hearing. There was a hearing. And, Your Honor, the – Well, but help me. Where in this record can I find evidence that he sought a hearing? It's not about that part of the process. This part of the – it's about their emergency suspension, unauthorized emergency suspension of him. And the medical board is not accountable. Let me ask the question differently because I want to make sure we're not missing each other. Let's assume for purposes of your question, this question that you're right. The emergency suspension was improper. But that the order that it came down with said, this is an emergency and we're doing this without a hearing. But you have a right to hearing and let us know and we'll have a hearing about the suspension order. And so I'm trying to figure out whether or not he actually sought a hearing about the suspension order as opposed to later responding to a complaint or did anything else. And I think the answer is no, is it not? No, because it was superseded by the complaint filed five months later. Five months later. But in the intervening five months, he never sought a hearing. Or at least we agree on that? I think that's correct, Your Honor. Okay. That's helpful. I'm just trying to get the record straight. I'm way over my time for reserving. You're fine. We've taken – you're not yet. We have helped you with that, so we'll give you some more time. Let me make sure Judge Wynn hasn't had an opportunity to get in a word edgewise. I'm fine. Okay. All right. Do you want to maybe reserve the rest of your time? When you come back, we'll put two minutes on the clock for you. You bet. Okay. Thank you very much for your patience with our questions. We'll hear from the opposing counsel, please. May it please the Court. Colin Moore on behalf of the defendants in this case. So there's no – there's nothing on the record about kind of the post-emergency suspension process. So anything – I mean, I do have information on that if the Court is interested in what happened after that, but it's all outside of the record. Well, I guess my question is not in the record. I can't find anything in the record to suggest that there was a post-suspension hearing. Is my reading of the record correct? Your reading of the record is correct. It's not that we're inviting you. I didn't mean to suggest we're inviting you to go outside the record. I'm just trying to remind people. I thought opposing counsel and Judge Hurwitz were talking past each other. Maybe it was just me. But I don't have any requests for a hearing.  And we didn't miss it. Nothing in the record. Okay. If that's true, what's the significance of it? Well, I think – I mean, I think to your point, the significance is I think a lot of what plaintiffs complain in this case is the board's view of what the standard of care is in these cases. And I think, you know, to the extent this 1983 action is being used to advance that view, it's inappropriate because the proper method of challenging what a standard of care would be in these circumstances would be to go through that. Well, but there's no exhaustion requirement for 1983 actions. So I'm trying to figure out, again – Correct. To the extent he was making a procedural due process argument, and maybe he is, it seems to me not going forward with an available hearing might hurt that. But his argument much more seems to be a substantive one, which is that –  Correct. And I think as a legal matter, it – You punished him for something you shouldn't have punished him for. And so what's the – why does the absence of a hearing affect that claim? I don't know that it does as a legal matter. I think – I mean, at the end of the day, what we're looking at is the actions the plaintiff is challenging in his complaint and whether or not they fall within the scope of absolute immunity. And I think so, kind of, we're focused on the emergency suspension order and what the board's function is in that as a quasi-judicial process. I want to go back to Judge Kristen's question if I can. Focus on the – not the board members themselves, but the staff members. And one of them, as I read the complaint, is really only being sued in his supervisory authority. But the staff member that was supposed to have fabricated evidence. If there isn't absolute immunity, why isn't an allegation that somebody fabricated evidence enough to get past qualified immunity at the pleading stage? Well, I think – I mean, to step back, I think we – our position is there is absolute immunity for the staff members in this case. Why isn't it much more like a social worker? We've said social workers who are out in the field doing investigation work would be afforded only qualified immunity. And that there is no protection if someone actually were to falsify evidence. I have another problem with the falsification allegation, which is I think it's insufficiently – I think it's very vague and conclusory. But just paper over that, if you would, for a minute. Why isn't this closer to a function served by a social worker? Like in a child in need of aid cases, we have said those folks are not entitled to absolute immunity. I think the short answer is, you have to look at, as you acknowledge, the functions that are being challenged. And so we're not looking at the title as an investigator. And applying that functional approach here, I think that the best reading of plaintiff's allegations against the staff members is that he's challenging staff actions that are quasi-prosecutorial. Well, why? One of them is initiating a letter saying, hey, doctor, somebody's made a complaint against you. It calls for a response, but not a response to the board. It's not like a notice to appear or a complaint summoning an official response to the board. It's a correspondence, that's my word, communication between the respondent and the investigator. It seems to me very pre-litigation. Forgive me for interrupting you. Yeah, I see your point. I think my reading of the allegations, I think the better reading of the allegations is that really when plaintiff is alleging that investigators wrote misleading allegations and fabricated evidence, that was in the context of the board's, the investigators' contribution to the emergency suspension order. It kind of wound up that way, but you don't know how that's going to turn out. That's with 20-20 hindsight, and I think that's what we don't do. So the investigators are going out, presumably sending out other types of letters to other care providers that don't wind up advancing to the point of an adjudicatory hearing. That's the challenge in these cases. The case laws try to draw this line between what's advocacy and what is investigative. Do any of the cases deal with staff that are part of the adjudicative agency? When we look at the social worker cases, they're a little bit different because this social services agency itself doesn't adjudicate the case. The court does. They're like prosecutors in the sense that they are outside parties that come to the adjudicative agency. I'm not sure I know the answer to this question. Does it matter that they are adjuncts of the adjudicative agency themselves? I think it does. As we know, these types of agencies are wearing many hats in these cases. Professional staff is assisting along the line of this process. I think it does matter in that you want to look at where along the continuum of the process it falls. I struggle with the same thing because the briefing lumps defendants together as one group but there's got to be an analytical difference between the board members and the staffers. Do we know from the allegations as it stands what their role is? Don't we have to import some outside knowledge about how these boards really work and the functions that the staffers play in that process? Should we do that in this case? Are we permitted to do that or are we stuck with the allegations as they stand right now? I think that goes to the problem that we're papering over for the minute, which is that the allegations themselves are very conclusory and we don't have information as to what the role is and what the role that is being alleged was problematic. Couldn't that be fixed with an amendment? For the first time today, because it's not in the record, we hear what the precise allegation of making up things is. Had that been alleged in the complaint, would that be sufficient? Assuming we're only now dealing with qualified immunity and not absolute immunity. I think if there had been perhaps a I think we'd have to have more than we have as far as what is identifying what the fabrication of evidence is or the I'm sorry. I lost my train of thought there. Let me rephrase the question for you. Let's assume for a moment we're only dealing with qualified immunity that we don't think the staff members are entitled to absolute immunity and a better complaint had been filed that said what I accused the staff members of is making up a relationship with a patient that didn't exist. Would that be enough to get past qualified immunity? I think the district court got into this a little bit. A fabrication of evidence claim requires As opposed to a mistake. In other words, I don't think anybody thinks that a mistake in accusation or negligent one would give rise to  There are certain elements to that kind of claim that need to be alleged and facts supporting that. I think the answer to your question is not necessarily. It depends on whether those things and there's a causation element to the fabrication of evidence claim and there's, I think, got to be some factual allegations that would support an inference of a deliberateness or willfulness and so not necessarily. We're at the pleading stage here, right? That's an interesting point because at the top of the hour we were talking about how we're very careful about absolute immunity. Imagine what it can paper over. It's very concerning and so we're pretty parsimonious about that. It sounds to me like there isn't a scenario under which we could say that somebody who's wearing this investigator hat is definitely always on one side of the line or the other because we're, by definition, talking about the function he or she is performing in any given day. Is that a fair... I think it's a fair characterization. Again, we don't have this information on the record as to what the job title and duties of the investigators are, but I think there are probably functions that they perform that are police-like which is kind of on one side of the line. So on this record, it seems to me that that would certainly mitigate against any kind of a disposition that pronounces that an investigator in... on these allegations would be entitled to absolute immunity. Well, my point is we don't really know. If the premise is that somebody with this job title could be in this particular scenario working as a staff member to an adjudicatory board might be performing a more investigative role on a given day, then I'm pushing back on your notion that we should be decreeing that this individual's entitled to... those individuals, there's two of them, would be entitled to absolute immunity. It feels to me like we don't know enough. I mean, I think to kind of fill out that, we look at the allegations. The problem is the allegations are vague. So now let's forget the papering over part. These allegations are quite vague. But if we take the allegations at face value that the investigators wrote misleading allegations, let's take that one first. Is that... forgive me for interrupting... is that the one that comes closest to being sustainable? I wouldn't say either of them are closer. I think they're both... Well, what other allegations are there? The fabrication of evidence. I think those are the two. Are you distinguishing between... I thought those were the same thing. When I asked how did they fabricate evidence, you said, well, by misleadingly presenting that patient D was his patient from the inception. Well, in the complaint, the allegation is that investigators wrote misleading allegations and essentially fabricated evidence, but based on the reliance on second-hand information. So I think... Okay. I took the fabrication of evidence to be the first... the title attributed to the first scenario. But I think I'm just splitting hairs. Go ahead. So I think in looking at the complaint as a whole and in context, the proffered amended complaint actually spells this out even in more detail. But I think what plaintiff is really getting at and challenging the actions of these investigators is their role in drafting this emergency suspension order. And I think that action clearly falls in the line of being falsely associated. I didn't understand that that was the allegation, but if it was, if I'm drafting an order for the adjudicative person to sign... That's different. That's different than the accusation that I made was false. But it's certainly not limited to that. That's the problem we've got. It seems to me that there's one foot... At best, there's one foot in each camp and on a... Right? And there was an attempt to amend. We can see what the amendment would be. Right. And I think the amendment actually makes it clear that the allegations are aimed at the investigator's role in drafting the emergency suspension order. Those are... Okay. I'm not sure I read it that same way, but at this point I'd just be laboring. Did you have a... Yeah, I did have a question and it's... It's in the record, tell me, but this is... I think I learned for the first time today that a complaint was settled. Is there anything in the record about that? About the... A complaint being settled and... You're not asserting settlement as a part of this suit and you're not asserting claim preclusion or anything else, but so is there a settlement in this record somewhere? There's nothing in the record. Anything further? Thank you. Thank you. Steve Jonkis again for Dr. Thomas. I'd like to point out that ER 65 through 66 is an example of the allegations with respect to patient D, which were so misleading that the press said Dr. Thomas is guilty because he didn't give this kid a tetanus shot. Patient E, so we have a number of pages here of allegations regarding each of the patients, so I would also point out that we sought to amend our complaint and the what we do have, your proposed second amended, your proposed amended complaint.  If that were the complaint and I were reading it, would I conclude that you're complaining about the staff members drafting the emergency suspension order or that you're complaining about the allegations made? I'm sorry, the second one? Yeah. Are you... A fair reading of your proposed amended complaint with respect to the staff members, what are you complaining that they did? Are you complaining that they fabricated evidence or that they did something wrong in drafting the order? Because if it wasn't drafting the order, then it seems to me as Judge Kristen may have suggested, we're getting closer to being... So what is the allegation? What did the staff members do? What did they do according to the... They created these allegations that were misleading and then they drafted them up. But the only thing that... They drafted the allegations up, not the order? I'm trying to read your... I've got your second amended... No, we don't... I'm trying to read it and see what do you think you allege? What's your allegation? I just need... What's your allegation that the staff members did wrong? They drafted it up and they wrote the draft order. They investigated, they concluded misleading allegations, which I characterize as falsifying allegations. And they wrote the draft order. And none of that is prosecutorial work. Why isn't writing the draft order, which is the question I think Judge Kristen posed before, something like what my law clerks may do for me when they draft an opinion. They may be dead wrong, but the buck stops with me. The buck stops with the board. If drafting an order strikes me as different than making false allegations, which is why I'm trying to parse the two. The Supreme Court cases on this that talk about prosecutorial immunity only talk about getting ready for trial and conducting trial. I'm not worried about prosecutorial immunity here. I'm starting from the premise that you disagree with, that the board members have absolute immunity because they're in a quasi-adjudicative role. And if they are, I'm trying to figure out why somebody who drafts an order for them, putting aside making false allegations, I understand that, why somebody who drafts an order for them doesn't have the same immunity they do. Because they're not the judge. Only the judging function gets immunity. So I just have one more question, if I could. I'm trying to figure out, now that we understand that there was a request for a and we're only looking at the emergency suspension order, what relief are you looking, hoping to secure today? Reversal that the defendants are entitled to immunity and remand to consider to continue with the case. You're only making damages claims, correct? We have damages claims. You don't have any other claims in your complaint? I'm sorry, I didn't hear you. Any claims other than damages? That's what I'm trying to get at. Oh, no. Damages claims. That answers my question. We took a lot of your time, again, and you are well over it, but are there concluding remarks you'd like to make? Well, I'd like to say that I believe the judges are not the board members are not entitled to qualified immunity because they went beyond the scope of merely judging. They went beyond the scope of merely judging. They invented a rule and said you didn't follow our rule that you have to vaccinate kids and therefore you're guilty. They can't do that. They created a rule and they can't do that. The doctor has to give informed consent. That's his duty. It's his obligation. He cannot lie to his patient and say take vaccine A because the CDC recommends it when he knows that vaccine A is dangerous and hurts kids. So the board is saying you have to tell the parents to take vaccine A. As a matter of fact, you've got to make sure you've got to ensure that they take vaccine A. That's not the board's role. They're outside their scope of what they're supposed to do. They are untouchable because you cannot because of this absolute immunity idea. They have no accountability. Going to the administrative process, there's no damages in the administrative process. There's no judge. There's no jury. There's no discovery. There's no depositions. It's a kangaroo court, the administrative process. So the only way that people like Dr. Thomas can get their rights vindicated is through the federal courts. Thank you for your advocacy. Thank you both for your helpful advocacy on this important case.  We're going to take this under advisement.
judges: CHRISTEN, NGUYEN, HURWITZ